UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| HERITAGE BANK OF NEVADA,<br><br>    Plaintiff,<br><br>    v.<br><br>OWEN O'NEIL, SAUNDRA O'NEIL, individually and as Trustees of the OWEN & SAUNDRA O'NEIL 1998 TRUST, and DOES 1-10, inclusive,<br><br>    Defendants. | 3:14-CV-00681-LRH-WGC<br><br>ORDER |

Before the Court is Plaintiff Heritage Bank's ("Heritage") Motion for Partial Summary Judgment. Doc. #16.[1] Defendants Owen and Saundra O'Neil ("the O'Neils") filed an Opposition (Doc. #26), to which Heritage replied (Doc. #30).[2] The O'Neils also filed a Motion for Partial Summary Judgment. Doc. #33. Heritage filed a Response (Doc. #35), to which the O'Neils replied (Doc. #36).

**I.    Facts and Procedural Background**

At issue is a purported easement on adjacent parcels of land owned by Heritage and the O'Neils. Heritage owns a Heritage Bank branch location on Keystone Avenue in Reno, Nevada. The O'Neils own a drive-thru Starbucks Coffee location immediately adjacent to the Heritage

---

[1] Refers to the Court's docket number.

[2] The O'Neils filed objections to evidence submitted by Heritage. Doc. #37. The Court did not rely on the challenged evidence in writing this Order. The O'Neils' objections are therefore overruled as moot.

Bank, at 690 Keystone Avenue ("690 Keystone"). In 2005, the Reno Planning Commission conducted a parking study which found that in order to obtain a Special Use Permit, the Starbucks at 690 Keystone needed a total of sixteen parking spaces. The Starbucks location only had seven parking spaces, whereas the Heritage Bank had thirty spaces, including eight on the western edge of the Heritage property immediately adjacent to 690 Keystone. As a result, the Banks Hinckley Partnership ("BHP"), which purchased the Starbucks lot prior to the O'Neils, acquired a Reciprocal Easement Agreement ("Easement") for use of parking spaces, access, and drainage on the Heritage property.

The Easement was recorded on March 28, 2006, at which point Heritage was the legal owner of both properties. A deed transferring the 690 Keystone property to BHP was recorded on April 20, 2006. The O'Neils acquired 690 Keystone from BHP on June 5, 2014, and the O'Neils transferred the property to the Owen and Saundra O'Neil 1998 Trust on October 27, 2014. Although Heritage was originally comfortable with the Starbucks customers' use of Heritage's parking spots, Heritage claims that this use became overly-burdensome in 2014. While addressing the O'Neils' use of its parking spots, Heritage learned that the Easement was recorded when both parcels were owned by Heritage, which it claims establishes that the Easement was void from the start.

Heritage filed suit against the O'Neils in state court on November 24, 2014, requesting declaratory relief, rescission, and quiet title. Doc. #1. This action was removed to federal court on December 24, 2014. *Id.* The O'Neils filed an Answer and Counterclaim for injunctive and declaratory relief on January 20, 2015. Doc. #11. Heritage moved for Partial Summary Judgment on its claims for declaratory relief and quiet title on February 19, 2015, arguing that the Easement is void as a matter of law because Heritage owned both the Heritage property and what is now the O'Neils' property when the easement was recorded. Doc. #16 at 4.[3] On June 24, 2015, the O'Neils moved for Partial Summary Judgment for declaratory relief that the Easement is valid. Doc. #33.

---

[3] Heritage did not move for summary judgment on its claim for rescission on the O'Neils' counterclaim based on an implied easement theory.

2

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). A motion for summary judgment can be complete or partial, and must identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On an issue as to which the nonmoving party has the burden of proof, however, the moving party can prevail merely by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case. *Celotex*, 477 U.S. at 323.

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record that demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J,* 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there

must be evidence on which a jury could reasonably find for the party. *See id.* at 252. "[S]peculative and conclusory arguments do not constitute the significantly probative evidence required to create a genuine issue of material fact." *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir. 1982).

"[W]hen parties submit cross motion for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal citation omitted). The Court must consider the evidence presented by both parties, regardless of to which motion the evidence was attached. *Id*.

**III.   Discussion**

    **A.  Heritage's Motion for Summary Judgment**

        **1.  The Reciprocal Easement Was Void When Created**

The central dispute here is whether the Easement granting the O'Neils a right to use parking spaces on Heritage property was void when created because Heritage owned both parcels when the Easement was recorded. An easement cannot be created that benefits and burdens parcels under common ownership.[4] *See, e.g.*, *Austin v. Silver*, 33 A.3d 1157, 1160-61 (N.H. 2011) (holding that an easement was not created when the grantor owned both the dominant and servient lots); *Mattos v. Seaton*, 839 A.2d 553, 555 (R.I. 2004) ("The general rule is that no easement can be created over a section of land in favor of another adjoining parcel when one owner owns both properties."); *Freeman v. Walther*, 110 A.D.3d 1312, 1315 (N.Y. App. Div. 2013) (holding that an easement that was extinguished when it came under common ownership was not recreated upon sale of part of the land to another party). This reflects the rationale that a person does not need an easement in his or her own land because all uses of an easement are already included in his or her own property. *See Beyer v. Tahoe Sands Resort*, 29 Cal. Rptr. 3d 561, 571 (Cal. Ct. App. 2005).[5]

---

[4] Nevada precedent regarding the impact of common ownership upon creation of an easement is sparse. Accordingly, the Court has conducted an analysis of other states' easement laws, which support the conclusion that an easement cannot be created on parcels under common ownership.

[5] Both parties refer to the doctrine of merger to frame their respective arguments regarding whether the Easement was valid when formed. The Nevada Supreme Court has adopted the merger doctrine, which provides "[w]hen one party acquires present possessory fee simple title to both the servient and dominant

Heritage contends that the Easement was never valid because both parcels were owned by Heritage when the Easement was recorded, twenty-three days before 690 Keystone was transferred from Heritage to BHP. As such, the Easement is equally void against the O'Neils, as the successive owners of 690 Keystone. *See* Nev. Rev. Stat. § 111.025 ("Every conveyance, charge, instrument or proceeding declared to be void by the provisions of this chapter, as against purchasers, shall be equally void as against the heirs, successors, personal representatives or assigns of such purchasers."). The O'Neils argue that Heritage did not have full ownership of the property when the Easement was recorded because BHP had already acquired an equitable interest in the property due to oral agreements and pre-purchase actions. Therefore, the O'Neils argue, there was no common ownership because in order to prevent creation of an easement between parcels, the common owner must hold both legal and equitable title of the property in question. *See Beyer*, 29 Cal. Rptr. 3d at 571 ("[A] property owner who owns less than full title may validly create easements in his own favor on his land.").

Interpreting a California statute, the *Beyer* court found that there was no "unity" of estate because legal title in a portion of the property had been conveyed to the bank for the purposes of a timeshare development. *Id.* at 572. Therefore, the owners could create valid easements benefitting their property even before full ownership passed to the development. *Id.* A previous California Court of Appeals case held that in order for merger to occur, "the owner should have a permanent and enduring estate, an estate in fee, in both the dominant and servient estate, not liable to be disjoined again by operation of law." *Leggio v. Haggerty*, 42 Cal. Rptr. 400, 407 (Cal. Ct. App. 1965). The O'Neils extend this reasoning to argue that BHP's "equitable" interest in the property—created by entering into an oral agreement to buy the parcel—dissolved the unity of estate before the Easement was recorded. The O'Neils argue further that BHP's substantial investments in the property in the form of pre-purchase development creates an exception to the statute of frauds writing requirement for sales of land, and thus BHP held an

---

tenements, the easement merges into the fee of the servient tenement and is terminated." *Breliant v. Preferred Equities Corp.*, 858 P.2d 1258, 1261 (Nev. 1993). However, Heritage argues that the easement was void based on common ownership *when formed*, not that it became valid by merger based on the development of subsequent common ownership.

equitable interest in 690 Keystone when the Easement was recorded. *See Schreiber v. Schreiber*, 663 P.2d 1189, 1190 (Nev. 1983) (quoting *Evans v. Lee*, 12 Nev. 393 (1877)) ("Whenever one party, confiding in the integrity and good faith of another, proceeds so far in the execution of a parol contract that he can have no adequate remedy unless the whole contract is specifically enforced, then equity requires such relief to be granted.").

However, Nevada law does not require the enforcement of an invalid contract on equitable grounds. Under Nevada law "[t]he mere refusal to perform a . . . void [agreement] may be a moral wrong, but it is in no sense a fraud in law or in equity." *Moore v. De Berardi*, 213 P. 1041, 1044 (Nev. 1923); *see also G.L. Mezzetta, Inc. v. City of Am. Canyon*, 78 Cal. App. 4th 1087, 1095 (Cal. Ct. App. 2000) (finding that the doctrine of estoppel "may [not] be invoked to enforce a void contract"). Another California court stated that the merger doctrine "is applied only where it prevents an injustice and serves the interests of the person holding the two estates." *Hamilton Court, LLC v. E. Olympic, LP*, 154 Cal. Rptr. 3d 924, 927 (Cal. Ct. App. 2013). However, this statement refers to the doctrine of merger for a valid easement, not whether equitable considerations can revive a void easement. Furthermore, this case is distinct from *Beyer*, in which actual legal title was in the possession of another entity and had been recorded when the easement was created. *See* 29 Cal. Rptr. at 571, 576 (referring to a recorded deed and "time share declaration"). Here, Heritage still held full ownership of 690 Keystone when the easement was executed and recorded. The transfer of ownership of what is now the O'Neils' property was not recorded until three weeks later. The O'Neils do not identify any case law supporting the proposition that equitable reliance on oral statements would destroy unity of title and allow for the creation of an easement where no easement was otherwise possible, and the Court is not aware of any such precedent.

Additionally, the O'Neils' reliance on exceptions to the doctrine of merger in other areas of property law is immaterial. Nevada law recognizes the traditional law of merger as it applies to easements: when both the benefitted and burdened parcels of an easement come into unified possession, the easement is extinguished. *See Breliant*, 858 P.2d at 1261 (holding that a parking easement designating thirty parking spaces terminated when one party acquired title to both

6

parcels). Defendants cite to equitable exceptions to the merger doctrine from other areas of property law. *See Roy v. Luschar*, 835 P.2d 807, 810 (Nev. 1992) (finding that the intent of the parties was relevant to merger doctrine as applied to mortgage debt); *Aladdin Heating Corp. v. Trs. of Cent. States*, 563 P.2d 82, 85 (Nev. 1977) (considering the parties' intent to create a merger related to a mechanics' lien). However, in this instance there was no merger because at the time the Easement was recorded, Heritage owned both properties; in other words, no easement existed that could be extinguished by a subsequent merger. Thus, the equitable exceptions to merger identified by the O'Neils are not directly applicable here, and the Court declines to graft such exceptions onto Nevada law of easements to revive an easement that was void when created under widely-accepted property law.

The O'Neils assert two arguments to support their claim for an express easement that more accurately support their Counterclaim that an easement was created by implication.[6] First, the O'Neils display convincingly that the intent of the Easement was always to provide parking spaces on Heritage's property to BHP after it secured ownership of 690 Keystone. The city's Special Use Permit required 690 Keystone to have sixteen available parking spaces in order to function as a Starbucks location. Heritage CEO Wilmoth stated that the Easement was created "to allow Banks and Hinckley to sign a lease with Starbucks." Doc. #26, Ex. A at 45:2-18. Additionally, the Easement itself states that BHP "is (or contemporaneously herewith will become) the owner of that certain parcel of real property," referring to 690 Keystone. Doc. #16, Ex. 8. However, this intent is more relevant to the determination of whether the O'Neils have an implied easement for the parking spaces, rather than an express easement. In *Adams v. Deen*, the court also distinguished the implied easement analysis from the express easement analysis. No. 43288-9-II, 2013 WL 6044379, at *3-5 (Wash. Ct. App. Nov. 13, 2013).[7] Prior to granting an implied easement, the court held that no express easement had been created despite the parties' clear intent to create an express easement:

---

[6] Plaintiff concedes that the O'Neils have an easement by implication for nine parking spaces on the Heritage property. *See* Doc. #30 at 11.

[7] Although *Adams*—an unpublished decision of the Washington Court of Appeals—lacks precedential value, the Court finds it to be persuasive.

7

> [A]lthough it is clear from the record that the Fialas *intended* on creating an express easement . . . no such easement was ever created: because a landowner cannot burden her own land with an easement benefitting herself, it follows that she cannot grant successive owners-in-interest to the same land an easement that is not, by law, grantable.

*Id.* at *5. Similarly, although the parties intended to create an express easement that benefitted the 690 Keystone property, Heritage's common ownership of both properties when the Easement was recorded was fatal to the Easement, and arguments regarding the parties' intent and history of use are best considered in the context of a potential implied easement.

Second, Defendants note that the O'Neils, as innocent third-party purchasers of 690 Keystone, would face substantial prejudice if the easement is invalidated. Because the Special Use Permit and City of Reno parking space regulations require more spaces than are present on the O'Neils' property, the O'Neils assert that the parcel's current use as a fast food drive-thru would expire and the value of the property would allegedly be reduced by $800,000.[8] Doc. #26 at 17. Again, this argument is more applicable to the O'Neils' counterclaim that an easement has been created by implication. *See Alrich v. Bailey*, 630 P.2d 262, 264 (Nev. 1981) (an easement by implication requires (1) unity of title and subsequent separation by grant of the dominant parcel; (2) an apparent and continuous user; and (3) the easement must be necessary to the reasonable enjoyment of the dominant parcel).

The Court has found that both properties were owned by Heritage when the Easement was recorded. Additionally, the O'Neils have failed to produce evidence to establish that the easement was not void when created. Accordingly, the Court finds as a matter of law that the easement was void when created, and grants the Plaintiff's Motion for Partial Summary Judgment on its claim for declaratory relief.

///

///

---

[8] This prejudice is not likely because Heritage has acknowledged that an implied easement for nine parking spaces may exist to the benefit of the O'Neils' property. Doc. #30 at 11. Along with the seven parking spaces on the O'Neils' property, this would meet the sixteen parking spaces required by the city's Special Use Permit.

8

### ii. Claim for Quiet Title

Heritage further requests that the Court grant summary judgment as to its quiet title claim because the easement was void when created. *See Del Webb Conservation Holding Corp. v. Tolman*, 44 F. Supp. 2d 1105, 1110 (D. Nev. 1999) (stating that a quiet title "action requests a judicial determination of all adverse claims to disputed property"). The Court has found that the express easement was void as a matter of law. However, disputed questions of material fact remain as to Plaintiff's quiet title claim because arguments and evidence regarding the existence of an implied easement have not been presented at this stage.[9] Moreover, Heritage has conceded that an easement by implication exists for nine parking spaces—though not the entire parking lot—on the Heritage property.[10] Therefore, the Court denies Heritage's Motion for Partial Summary Judgment as to its quiet title claim.

### B. Defendants' Motion for Partial Summary Judgment

As discussed above, the Court finds as a matter of law that the Reciprocal Easement Agreement was void when created. After conducting an independent review of the arguments and evidence submitted in the O'Neils' Motion for Partial Summary Judgment, the Court again finds that the Easement was void when created because both parcels were owned by Heritage, and no ownership had legally passed to BHP. As such, the Court denies Defendants' Motion for Partial Summary Judgment on their claim for declaratory relief that the Easement is valid.

## IV. Conclusion

IT IS THEREFORE ORDERED that Heritage's Motion for Partial Summary Judgment (Doc. #16) is GRANTED in part and DENIED in part.

///

---

[9] In supplemental pleadings, Heritage alleges that no case or controversy exists for the O'Neils' counterclaims because the O'Neils objected to interrogatories regarding damages based on the fact that no damages had been claimed on the counterclaim. Doc. #38; Doc. #39. However, the O'Neils counterclaim requests injunctive and declaratory relief, and the Court does not read their discovery objections as extinguishing any case or controversy related to their counterclaim.

[10] Dennis Banks, a partner with BHP, has stated that "[a]ny contention that the Easement was intended to grant more parking on the Heritage Parcel than the nine (9) spaces required to satisfy the SUP is contrary to the parties' original intent at the time of the execution of the original Easement." Doc. #30, Ex. 13 ¶15.

1    IT IS FURTHER ORDERED that the O'Neils' Motion for Partial Summary Judgment (Doc. #33) is DENIED.

IT IS FURTHER ORDERED that the O'Neils' Objections to evidence submitted by Heritage (Doc. #37) are OVERRULED as moot.

IT IS FURTHER ORDERED that Heritage's Motion for Clarification regarding whether a response to the O'Neils' objections is required (Doc. #41) is DENIED as moot.

IT IS FURTHER ORDERED that the parties shall file a joint pretrial order pursuant to Local Rules 16-3 and 16-4 within forty-five (45) days of this Order.

IT IS SO ORDERED.

DATED this 10th day of August, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE