1
2
3
4
5
6              UNITED STATES DISTRICT COURT

7                  DISTRICT OF NEVADA

8                      * * * * *

9    HERITAGE BANK OF NEVADA,

10        Plaintiff,                              3:14-CV-00681-LRH-WGC

11        v.

12   OWEN O'NEIL, SAUNDRA O'NEIL,                 ORDER
     individually and as Trustees of the OWEN &
13   SAUNDRA O'NEIL 1998 TRUST, and DOES
     1-10, inclusive,
14
15        Defendants.

16

17        Before the Court is Defendants Owen H. O'Neil and Sandra A. O'Neil's ("the O'Neils")

18   Motion to Reconsider.  Doc. #43.[1]  Plaintiff Heritage Bank of Nevada ("Heritage") filed an

19   Opposition (Doc. #44), to which the O'Neils replied (Doc. #45).

20   **I.        Facts and Procedural Background**

21        At issue is a purported easement on adjacent parcels of land owned by Heritage and the

22   O'Neils.  Heritage owns a Heritage Bank branch on Keystone Avenue in Reno, Nevada.  The

23   O'Neils have owned a drive-thru Starbucks Coffee branch immediately adjacent to the Heritage

24   Bank, at 690 Keystone Avenue ("690 Keystone") since 2014.  In 2004, Heritage began

25   discussions about selling the 690 Keystone parcel to the Banks-Hinckley Partnership ("BHP").

26   In 2005, the Reno Planning Commission conducted a parking study which found that in order to

27

28   _____
     [1] Refers to the Court's docket number.

obtain a Special Use Permit, the Starbucks at 690 Keystone needed a total of sixteen parking spaces.  The 690 Keystone parcel only had seven parking spaces, whereas the Heritage Bank had thirty spaces, including eight on the western edge of the Heritage property immediately adjacent to 690 Keystone.  As a result, BHP, which later sold 690 Keystone to the O'Neils, acquired a Reciprocal Easement Agreement for use of parking spaces, access, and drainage on the Heritage property.

The easement was recorded on March 28, 2006, at which point Heritage was the legal owner of both properties.  Heritage and BHP state that both parties understood that the easement was for nine parking spaces, but that the map identifying the nine parking spaces was inadvertently excluded from the easement.  A deed transferring 690 Keystone to BHP was recorded on April 20, 2006.  The O'Neils acquired 690 Keystone from BHP on June 5, 2014, and the O'Neils transferred the property to the Owen and Saundra O'Neil 1998 Trust on October 27, 2014.  Although Heritage was originally comfortable with the Starbucks customers' use of Heritage's parking spots, Heritage claims that this use became overly-burdensome in 2014. While addressing the O'Neils' use of its parking spots, Heritage learned that the easement was recorded when both parcels were owned by Heritage, which it claims establishes that the easement was void from the start.

Heritage filed suit against the O'Neils in state court on November 24, 2014, requesting declaratory relief, rescission, and quiet title.  Doc. #1.  This action was removed to federal court on December 24, 2014.  *Id.*  The O'Neils filed an Answer and Counterclaim for injunctive and declaratory relief on January 20, 2015.  Doc. #11.  Heritage moved for partial summary judgment on its claims for declaratory relief and quiet title on February 19, 2015, arguing that the easement is void as a matter of law because Heritage owned both the Heritage property and what is now the O'Neils' property when the easement was recorded.  Doc. #16 at 4.[2]  On June 24, 2015, the O'Neils moved for partial summary judgment for declaratory relief that the easement is valid.  Doc. #33.  On August 10, 2015, the Court denied the O'Neils' Motion for Summary Judgment and granted Heritage's Motion for Summary Judgment in part.  Doc. #42.  In

---

[2] Heritage did not move for summary judgment on its claim for rescission.

1  particular, the Court found as a matter of law that no express easement existed, but that disputed

2  questions of material fact remained as to whether the parties had an implied easement.  The

3  O'Neils filed their Motion to Reconsider on August 24, 2015.  Doc. #43.

4  **II.    Legal Standard**

5          The O'Neils move for reconsideration under Federal Rule of Civil Procedure 54(b),

6  which provides that the Court has authority to reconsider, modify, alter, or revoke any order

7  adjudicating fewer than all the claims in an action at any time before the entry of final judgment.

8  *Wright v. Watkins and Shepard Trucking, Inc.*, 968 F. Supp. 2d 1092, 1096 (D. Nev. 2013).

9  "Reconsideration is appropriate if the district court (1) is presented with newly discovered

10  evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is

11  an intervening change in controlling law."  *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS,*

12  *Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  A motion to reconsider "is not an avenue to re-litigate

13  the same issues and arguments upon which the court has already ruled."  *Wright*, 968 F. Supp. 2d

14  at 1096 (quoting *U.S. Aviation Underwriters, Inc. v. Wesair, LLC*, No. 2:08-cv-0891, 2010 WL

15  1462707, at *2 (D. Nev. Apr. 12, 2010)).

16  **III.   Discussion**

17          The O'Neils identify three arguments that it alleges the Court did not consider in its prior

18  Order.  First, the O'Neils argue that evidence indicates that Heritage and BHP intended that the

19  easement would not become effective until after the property transferred ownership.  Second, the

20  O'Neils argue that Heritage's ownership was never shown to invalidate the easement.  Third, the

21  O'Neils argue that BHP had an equitable interest in the property when the easement was

22  recorded, which destroyed Heritage's unity of ownership.  Noting that a Motion for

23  Reconsideration may not be used to re-argue issues that the Court has already decided, the Court

24  addresses these three arguments to promote maximum clarity regarding the Court's position.

25          **A.  Intent and Timing of Easement**

26          The O'Neils argue that the undisputed evidence demonstrates that Heritage and BHP

27  intended that the easement "should not become effective on recordation but rather on the later

28  recording of the deed transferring ownership of 690 Keystone from Heritage to BHP."  Doc. #43

1    at 7.  This is important because Nevada law provides that "[t]he purpose of contract

2    interpretation is to determine the parties' intent when they entered into the contract."  *Century*

3    *Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014).

4        As the Court discussed in its prior Order, the O'Neils convincingly demonstrated that the

5    intent of the parties was for the easement to be recorded after the property transferred from

6    Heritage to BHP.  Indeed, the easement provides that BHP "is (or contemporaneously herewith

7    will become) the owner of that certain parcel of real property," which later became the O'Neil

8    property.  Doc. #16, Ex. 8.  BHP partner Dennis Banks ("Banks") wrote in a declaration that the

9    easement "was not supposed to be recorded until BHP became the owner of record of the O'Neil

10   Property," and that he did not know why it was recorded early.[3]  Doc. #30, Ex. 13 ¶11.

11   Additionally, Dennis Banks Construction Co. project manager Casey Solum wrote Heritage CEO

12   Charles Wilmoth to state that the easement would transfer with the property ownership.  Doc.

13   #26, Solum Decl., Ex. D; *see id.*, Leon Decl., Ex. A at 114:22-115:19.

14       The Court again notes that the O'Neils have convincingly demonstrated that the intent of

15   the easement was to enable BHP to use parking spaces on Heritage's property after BHP secured

16   ownership of 690 Keystone.  As before, however, the Court finds that the express easement

17   between Heritage and BHP was void when created.[4]  An easement cannot be created that

18   benefits and burdens parcels under common ownership.  *See, e.g.*, *Austin v. Silver*, 33 A.3d 1157,

19   1160-61 (N.H. 2011) (holding that an easement was not created when the grantor owned both the

20   dominant and servient lots); *Mattos v. Seaton*, 839 A.2d 553, 555 (R.I. 2004) ("The general rule

21   is that no easement can be created over a section of land in favor of another adjoining parcel

22   when one owner owns both properties."); *Bel Marin Keys Cmty. Servs. Dist. v. Bel Marin*

23

---

24   [3]  Banks added that "[a]ny contention that the Easement was intended to grant more parking on the
25   Heritage Parcel than the nine (9) spaces required to satisfied the SUP is contrary to the parties' original
     intent at the time of the execution of the original Easement."  Doc. #30, Ex. 13 &15.

26   [4]  If the easement was void for BHP, it would also be void for the O'Neils as successors.  *See* Nev. Rev.
27   Stat. § 111.025 ("Every conveyance, charge, instrument or proceeding declared to be void by the
     provisions of this chapter, as against purchasers, shall be equally void as against the heirs, successors,
28   personal representatives or assigns of such purchasers.").

*Enters., Inc.*, 582 F.2d 477, 481 n.3 (9th Cir. 1978) (noting that California law "may be read to prohibit an owner from creating an easement in his own land"). This reflects the rationale that a person does not need an easement in his or her own land because all uses of an easement are already included in his or her own property. *See Beyer v. Tahoe Sands Resort*, 29 Cal. Rptr. 3d 561, 571 (Cal. Ct. App. 2005).[5]

Recording the easement prior to legal sale of 690 Keystone appears to have been a mistake.[6] This does not change the fact that an easement cannot be created on land for which the dominant and servient estates are held in common ownership. Though not identical, this scenario is similar to that of *Breliant*, in which an easement was extinguished by merger, but was allegedly revived later when unity of ownership was severed. The Nevada Supreme Court held that severance of common ownership did not automatically revive the extinguished easement. *Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 319 (Nev. 1996). Rather, revival could result "from an express stipulation in the conveyance by which the severance is made or from the implications of the circumstances of the severance." *Id.* Although the easement indicates that the parties intended for it to go into effect after the property was sold to BHP, the deed transferring property to BHP does not expressly refer to any such easement, nor does the deed transferring the property to the O'Neils. *Breliant* continued: "[T]he mere reference to an extinguished easement in a deed is insufficient, as a matter of law, to revive the easement." *Id.* Applying this result to an easement that was void when created due to unity of ownership, the Court finds that mere mention of a future sale in said easement would not render the easement valid.

---

[5] Both parties refer to the doctrine of merger to frame their respective arguments regarding whether the easement was valid when formed. The Nevada Supreme Court has adopted the merger doctrine, which provides "[w]hen one party acquires present possessory fee simple title to both the servient and dominant tenements, the easement merges into the fee of the servient tenement and is terminated." *Breliant v. Preferred Equities Corp.*, 858 P.2d 1258, 1261 (Nev. 1993). Here, Heritage argues that the easement was void based on common ownership *when formed*, not that it became valid by merger based on the development of subsequent common ownership.

[6] Heritage general counsel Rabkin and BHP partner Banks note that the easement was "recorded prematurely and before escrow even closed in that incomplete form. At the time of premature recordation, the Bank still owned the O'Neil property." Doc. #130, Ex. 10 ¶12; *see also id.*, Ex. 13 ¶10.

1    The Court previously noted that the O'Neils' argument regarding the intent of the parties

2    to create an easement for the parking spaces on Heritage's property was more convincing for an

3    argument that an easement had been created by implication. Doc. #42 at 7; *see Alrich v. Bailey*,

4    630 P.2d 262, 264 (Nev. 1981) (an easement by implication requires (1) unity of title and

5    subsequent separation by grant of the dominant parcel; (2) an apparent and continuous user; and

6    (3) the easement must be necessary to the reasonable enjoyment of the dominant parcel).

7    Indeed, Heritage does not dispute that an easement has been created by implication as to nine

8    parking spaces on Heritage's property. Doc. #130 at 11. The Court referred to *Adams v. Deen*,[7]

9    in which the court distinguished the implied easement analysis from the express easement

10   analysis. No. 43288-9-II, 2013 WL 6044379, at *3-5 (Wash. Ct. App. Nov. 13, 2013). Prior to

11   finding that an implied easement existed, the court held that no express easement had been

12   created despite the parties' clear intent to create an express easement:

13        [A]lthough it is clear from the record that the Fialas *intended* on creating an
          express easement appurtenant benefitting the Deen parcel when they conveyed
14        both parcels to the Pierces, no such easement was ever created: because a
          landowner cannot burden her own land with an easement benefitting herself, it
15        follows that she cannot grant successive owners-in-interest to the same land an
          easement that is not, by law, grantable.
16

17   *Id.* at *4 (emphasis in original).

18        The O'Neils argue that *Adams* is distinguishable because the parties could not have had

19   shared intent due to the passage of time between transfers of ownership in that case, and here, the

20   easement was recorded only twenty-three days before ownership of 690 Keystone transferred to

21   BHP. However, the *Adams* court determined that the easement was void when Fialas attempted

22   to create the easement while transferring ownership of the property to the Pierces during a

23   specific time period, in May 1989, not over a period of years. *Id.* at *1, 4. The Fialas and

24   Pierces clearly intended for the easement to transfer with the deed because the easements were

25   expressly mentioned in the deed. *Id.* at *1. As here, the court determined that the express

26   easement was void despite the fact that the parties intended for the easement to pass with transfer

27
     _____

28   [7] Although *Adams*—an unpublished decision of the Washington Court of Appeals—lacks precedential
     value, the Court finds it to be persuasive.

6

of the property on a specific date.[8]  The court went on to explain that if an express easement had been created, it would have been extinguished by merger due to subsequent common ownership, but the court's holding was based on the fact that the Fialas "never successfully created an express easement." *Id.* at *4.  The Court reasserts that it finds this reasoning persuasive, and concludes that the parties' intent in this case does not revive the void easement.

Based on the foregoing, the Court finds that even if the parties intended for the easement to be recorded after ownership passed to BHP, recordation of the easement prior to sale of the property rendered the easement void due to unity of ownership.  The Court again notes that the O'Neils can present evidence and arguments that they have an implied easement right to access parking spaces on Heritage's property.  However, the O'Neils' arguments regarding intent for the easement to become effective after sale of the property to BHP does not warrant reconsideration of the Court's determination that the express easement was void when created.

**B.  Evidence Regarding Ownership**

The O'Neils' second argument is that Heritage never sufficiently demonstrated that unity of ownership invalidated the easement.  This argument follows a string of persuasive California court of appeals cases discussing the merger doctrine.  In *Leggio v. Haggerty*, the court found that for an easement to be extinguished by merger, "the owner should have a permanent and enduring estate, an estate in fee, in both the dominant and servient estate, not liable to be disjoined again by operation of law." 42 Cal. Rptr. 400, 407 (Cal. Ct. App. 1965).  The court elaborated that ownership "should be coextensive and equal in validity, quality, and all other circumstances of right. Accordingly, an easement is not extinguished under the doctrine of merger by the acquisition by the owner of the dominant or servient estate of title to only a fractional part of the other estate." *Id.*  Referring to this language in *Leggio*, another court found that "the same principles should apply to the *creation* of easements."  *Beyer*, 29 Cal. Rptr. 3d at 572-73 (emphasis in original).  "The same policy is at issue whether the easement is created or extinguished: ownership of the underlying parcel makes the easement unnecessary. But where

---

[8]  Like Nevada, Washington contract law focuses on determining the intent of the parties.  *See Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 266-67 (Wash. 2005).

the 'owner' does not own legal title, we cannot say with certainty that the easement is unnecessary." *Id.* at 573.

A more recent case indicates that the requirement that an owner have a "permanent and enduring" estate in both properties in order to extinguish an easement refers not to how long the owner will retain ownership of the parcels, but rather to the type of estate that the owner claims to the parcels. The *Zanelli v. McGrath* court found:

> The requirement that the ownership of the dominant and servient tenement be 'permanent and enduring' and 'coextensive and equal in validity' means that the unity of ownership must be of a fee simple absolute estate in both the dominant and servient tenements, and that the common ownership is of the entire dominant and servient tenement, not merely a fractional share. Thus, for example, where one person has fee simple absolute estate in either the dominant or servient tenement and a lesser estate in the other, such as a leasehold or life estate, the easement may only be suspended for the duration of the lesser estate, and is revived when the lesser estate terminates.

82 Cal. Rptr. 3d 835, 845-46 (Cal. Ct. App. 2008). Reading *Leggio*, *Beyer*, and *Zanelli* in succession, the Court finds that the "permanent and enduring" language refers not to the length of time that an owner held certain properties in common ownership, but rather the type of estate the owner had in the properties.

The O'Neils argue that the common ownership was not permanent and enduring because "there was only a 23-day gap between" the recording of the easement and transfer of legal title of 690 Keystone to BHP. *Zanelli* refutes this argument. There is no dispute that prior to recording the easement, Heritage had full ownership of both parcels at issue. Indeed, the record includes a Preliminary Title Report for 690 Keystone prepared on April 12, 2006—two weeks after the easement was recorded and one week prior to sale of the property to BHP—which states that Heritage had a vested fee estate for 690 Keystone. Doc. #26-1 at 51-52. Thus, Heritage's ownership of 690 Keystone was permanent and enduring under *Zanelli*. However, the O'Neils' third argument, discussed below, contends that the BHP had an equitable interest in the property when the easement was recorded. If true, this purported equitable interest could indicate that Heritage did not have a "permanent and enduring" stake in the property when the easement was recorded.

### C.  Equitable Interest When Easement Was Recorded

The O'Neils present two theories to support the argument that BHP had an equitable interest in the property when the easement was recorded.  First, the O'Neils contend that there was a written agreement for the sale of 690 Keystone before the easement was recorded.  Second, the O'Neils contend that even if the equitable interest was based on an oral agreement, BHP obtained an equitable interest by engaging in "significant pre-purchase expenditures and related development activities," which amounted to substantial detrimental reliance.

The O'Neils' argument regarding the existence of a written Purchase and Sale agreement prior to recordation of the easement rests on the affidavit of Alan Rabkin ("Rabkin"), currently general counsel and senior vice president of Heritage, and outside counsel to Heritage in 2004.  Rabkin states that he was informed in 2004 that the bank "had entered into a Purchase and Sale Agreement" with BHP to sell a portion of the property that it owned on Keystone Street in Reno.  Doc. #30, Ex. 10 ¶3.  This is important because Nevada law provides that "when a contract for the sale of real property becomes binding upon the parties[,] [t]he purchaser is deemed to be the equitable owner of the land and the seller is considered to be the owner of the purchase price." *Harrison v. Rice*, 510 P.2d 633, 635 (Nev. 1973).

The O'Neils' argument that a purported written agreement in 2004 created an equitable interest in BHP's favor prior to recordation of the easement fails for three reasons.  First, despite referring to Rabkin's affidavit stating that the parties agreed to the sale in 2004—though not stating whether such agreement was written or oral—the O'Neils have not produced said written agreement, nor have they alleged that it was lost or destroyed such that oral parol evidence would be admissible.  *See Khan v. Bakhsh*, 306 P.3d 411, 413 (Nev. 2013) (finding that the plaintiffs "were entitled to present parol or other evidence to prove the existence and contents of the allegedly lost or destroyed" contract).  Second, BHP partner Banks himself stated that "BHP never believed or contended that it held any equitable interest in Heritage's property other than was specifically defined in the parties' agreement." Doc. #30, Ex. 13 ¶14.  Third, equitable interest only transfers once a sale "becomes binding upon the parties." *Harrison*, 510 P.2d at 635.  The affidavits of BHP's Banks and Heritage's Rabkin make clear that any sale agreement

1   formed in 2004 was not binding because the sale was contingent on BHP's ability to obtain a

2   special use permit from the city. Doc. #130, Ex. 10 ¶¶4-7; Doc. #130, Ex. 13 ¶¶3-8. The

3   O'Neils have not produced more than a scintilla of evidence to indicate that the sale agreement

4   was binding prior to transfer of ownership to BHP in April, 2006. The Court therefore finds that

5   any purported 2004 sale agreement did not create an equitable interest in the property that

6   undermined Heritage's full ownership of both properties.

7           The O'Neils next argue that "even if only an oral agreement existed, it is undisputed that

8   there were significant pre-purchase expenditures and related development activities as well as

9   direct negotiations with Starbucks which constituted substantial detrimental reliance by BHP

10  which resulted in an equitable interest in 690 Keystone." Doc. #43 at 13. Nevada law provides

11  that "[w]henever one party, confiding in the integrity and good faith of another, proceeds so far

12  in the execution of a parol contract that he can have no adequate remedy unless the whole

13  contract is specifically enforced, then equity requires such relief to be granted." *Schreiber v.*

14  *Schreiber*, 663 P.2d 1189, 1190 (Nev. 1983) (quoting *Evans v. Lee*, 12 Nev. 393 (1877)). Thus,

15  the O'Neils argue that the easement was not void when created because BHP obtained an

16  equitable interest in 690 Keystone prior to the easement based on its expenditures developing the

17  property prior to final sale.[9] Specifically, these expenditures include more than $100,000 in

18  project costs billed to BHP, of which more than $50,000 had already been paid by BHP to

19  Dennis Banks Construction Co. by the end of 2005. Doc. #26, Solum Decl., ¶¶2-3.

20          This argument fails for two primary reasons. First, BHP partner Banks stated in a

21  declaration that "BHP never believed or contended that it held any equitable interest in

22  Heritage's property other than was specifically defined in the parties' agreement." Doc. #30, Ex.

23  13 ¶14. Second, nothing in the record indicates that the O'Neils would have no adequate

24  remedy if the Court determined that the express easement was void when created. The record

25  _____

26  [9] The Court previously noted that Nevada law does not require the enforcement of an invalid contract on
    equitable grounds. Under Nevada law "[t]he mere refusal to perform a . . . void [agreement] may be a

27  moral wrong, but it is in no sense a fraud in law or in equity." *Moore v. De Berardi*, 213 P. 1041, 1044
    (Nev. 1923); *see also G.L. Mezzetta, Inc. v. City of Am. Canyon*, 78 Cal. App. 4th 1087, 1095 (Cal. Ct.

28  App. 2000) (finding that the doctrine of estoppel "may [not] be invoked to enforce a void contract").

shows that the City of Reno required that the 690 Keystone property have sixteen available parking spaces.  Doc. #26, Leon Decl., Ex. B at 5.  The 690 Keystone parcel includes seven parking spaces.  *Id.*, O'Neil Decl., Ex. B.  Both Heritage and BHP state that the original intent of the parties was to create an easement to provide nine parking spaces on Heritage's property for use by 690 Keystone to meet the City's demand.  Doc. #130, Ex. 10 ¶¶6, 17; *id.*, Ex. 13 ¶¶8, 15.  Both Heritage and BHP also note that a mistake appears to have occurred whereby the easement—which the Court has declared void—indicated that the 690 Keystone property was entitled to use of all parking spaces on Heritage's property.  *Id.*, Ex. 10 ¶¶8, 11-12; *id.*, Ex. 13 ¶¶10-12.[10]  Heritage has acknowledged that the O'Neils are entitled to use of nine parking spots based on an implied easement, and has attempted to enter into agreements expressly allowing the O'Neils use of these nine parking spaces.  Doc. #130 at 11; *id.*, Ex. 10 ¶¶16-18.  Because the 690 Keystone property already has access to seven other parking spaces, use of nine of Heritage's parking spaces would meet the City's requirement.  Thus, the O'Neils cannot establish that no adequate remedy is available unless the express easement is enforced because they would not lose the benefit of their pre-purchase expenditures if they have access to nine of Heritage's parking spaces.  Accordingly, the Court finds that the O'Neils have not established an equitable interest in the property to undermine Heritage's common ownership of both parcels when the easement was recorded.

**IV.   Conclusion**

The Court's previous Order granted summary judgment on Heritage's claim for declaratory judgment that the express easement was void as a matter of law, and denied summary judgment on the O'Neils' argument that the express easement was valid.  Doc. #42.[11]  The

---

[10] Heritage and BHP both indicate that the easement should have included a map of the two properties, on which the nine parking spaces intended to be included in the easement were circled.  However, the easement was executed without the attached map or the particular spaces circled.  It appears that the O'Neils are attempting to exploit this mistake by arguing that Heritage and BHP always intended for 690 Keystone to have access to the entire parking lot on the Heritage property.

[11] The Court also denied summary judgment as to Heritage's quiet title claim because the parties had not presented arguments and evidence regarding the existence of an implied easement, and Heritage has since conceded that an implied easement exists for nine parking spaces on Heritage's property.  Doc. #42 at 9.

O'Neils requested reconsideration of that Order based on the arguments addressed in detail in this Order.  Based on the foregoing, the Court finds that (1) regardless of the parties' intent, the easement was void when recorded because Heritage had full ownership of both parcels; (2) Heritage had a permanent and enduring interest—a fee—in both properties as a matter of law when the easement was recorded, even though 690 Keystone would soon be transferred to BHP; and (3) equitable considerations do not warrant enforcing the express easement.  Accordingly, the O'Neils' Motion to Reconsider is denied.

IT IS THEREFORE ORDERED that the O'Neils' Motion to Reconsider (Doc. #43) is DENIED.

IT IS FURTHER ORDERED that the parties shall file a joint pretrial order pursuant to Local Rules 16-3 and 16-4 within forty-five (45) days of the entry of this Order.

IT IS SO ORDERED.

DATED this 2nd day of November, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE