**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

HERITAGE BANK OF NEVADA,                    **CASE NO:  3:14-cv-00681-LRH-WGC**

                              Plaintiff,            **JUDGMENT**

vs.

OWEN H. O'NEIL, SAUNDRA A. O'NEIL,
Individually and as Trustees of the OWEN
& SAUNDRA O'NEIL 1998 TRUST,

                              Defendants.
_____/

      1.     Plaintiff Heritage Bank of Nevada ("Heritage") is the current owner of the

parcel of real property identified as Assessor Parcel Number 006-123-08 located in the City of Reno, State of Nevada (the "Heritage Property").  Heritage currently operates one of its bank branches on the Heritage Property.  Attached hereto as Exhibit A-1 is the legal description of the Heritage Property.

2.      Defendants Owen H. O'Neil and Saundra A. O'Neil, individually and as Trustees of the Owen & Saundra O'Neil 1998 Trust (collectively referred to as the "O'Neils") are the current owners of the parcel of real property identified as Assessor Parcel Number 006-123-04 located in the City of Reno, State of Nevada (the "O'Neils Property").  The O'Neils Property is currently leased to Starbucks.  Attached hereto as Exhibit A-2 is the legal description of the O'Neils Property.

3.      The Heritage Property and the O'Neil Property are directly adjoining properties, with the Heritage Property's western boundary being the O'Neils Property's eastern boundary.

4.      On November 24, 2014, Heritage filed its Complaint (Doc. #1).

5.      The O'Neils' Answer & Counterclaim in this action (Doc. #11) denied the Heritage's Complaint's allegations and affirmatively sought, among other things, the creation of an equitable easement for the O'Neils Property for a) the Heritage Property's parking spaces; b) vehicular and pedestrian access to/from the O'Neils Property over/through the Heritage Property's street entry/exit points as well as the interlocking driveway between the Heritage Property and the O'Neils Property; and c) drainage.

6.      On August 10, 2015, the Court entered its Order granting partial summary judgment to Heritage on its declaratory relief claim that the Reciprocal Easement was void as a matter of law.  Doc. # 42.  This Order, however, denied Heritage's motion for partial summary judgment on its quiet title claim because, among other things, Heritage had conceded that an easement by implication existed for the O'Neils Property for nine

(9) parking spaces on the Heritage Property arising out of the original special use permit obtained for the Starbucks business.  *See* Doc. #42 at 9.

7.     On August 26, 2016, a Drainage Easement was recorded (Doc. #4625974) relating to both the Heritage Property and the O'Neils Property.  This Judgment does not affect this Drainage Easement.

8.     On September 20, 2016, a settlement conference between the parties was held before Magistrate Judge William Cobb which resulted in the parties consenting to the entry of a Judgment by this Court upon the terms and conditions as set forth below.

9.     An easement is hereby established for the benefit of the O'Neils Property for the non-exclusive use of the following nine (9) designated parking spaces on the Heritage Property:  the eight spaces on the western boundary of the Heritage Property (the "Western Parking") and the farthest western space on the Heritage Property's southern boundary (the "Southern Parking") (collectively the "Designated Parking" unless otherwise specified herein).  The farthest western parking space on the Heritage Property's southern boundary is the most western space in that row of parking spaces along that southern boundary which is subject to the recorded Non-Exclusive Easement dated March 21, 1985, Document #98610 (the "Hewsons Non-Exclusive Easement") between the Heritage Bank Property and the adjacent property to the South owned by the Hewsons and on which the All About Kids child care business currently operates.

10.     Signage for the Western Parking shall state:  "Parking for Heritage Bank Customers or Starbucks Customers Only. One-Hour Parking Only.  Violators Will Be Towed at Owner's Expense."  Only Heritage shall have the right to initiate any towing of vehicles from its property.  In the event there is any material or substantial impairment regarding this parking, the O'Neils shall notify Heritage in writing and Heritage will take appropriate corrective actions.

11.     Signage for the Southern Parking shall state: "Parking for Heritage Bank Customers, Starbucks Customers or All About Kids Customers Parking Only.  One-Hour Parking Only.  Violators Will Be Towed at Owner's Expense."  Only Heritage shall have the right to initiate any towing of vehicles from its property.  In the event there is any material or substantial impairment regarding this parking, the O'Neils shall notify Heritage in writing and Heritage will take appropriate corrective actions.

12.     In the event that any material or substantial impairment arises regarding the O'Neils Property's non-exclusive use of the Southern Parking due to any actions by the Hewsons or the Hewsons' tenant (currently the All About Kids child care business), then Heritage immediately shall designate a new space for non-exclusive parking for the O'Neils Property on the Heritage Property outside the Hewsons Non-Exclusive Easement area.

13.     Within thirty (30) days of the entry of this Judgment, the owners of the O'Neils Property shall pay Heritage $250.00 for signage costs and Heritage then shall promptly provide the signage described in paragraphs 10-11 above.

14.     The owners of the O'Neils Property henceforth shall be obligated to pay to the owners of the Heritage Property thirty-three percent (33%) of any and all costs incurred by the Heritage Property relating to the care, maintenance and/or repair of any driveway or parking located on the Heritage Property.  This obligation does not extend to any costs or expenses associated with any designated landscaping area on the Heritage Property.  Any payment hereunder will be due thirty (30) days after delivery of written notification to the owners of the O'Neils Property of the amount due.

15.     Consistent with the access that has previously existed, an access easement is hereby established for the benefit of the Heritage Property and the O'Neils Property for the entry, exiting and passing over the Heritage and O'Neils Properties,

including to/from/over the interconnecting driveway between the two properties and the Keystone Avenue, West Seventh Street and Alvaro Street access points.

     16.    Upon entry of this Judgment, this action shall be concluded with each party to bear his/her/its own attorneys' fees and costs incurred in this action.

DATED this 28th November, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE



3366812
03/29/2006
12 of 15

**EXHIBIT "A-1"**
**LEGAL DESCRIPTION**
**HERITAGE PARCEL**
**APN 006-123-08**

A parcel situate within the Northeast 1/4 of Section 10, Township 19 North, Range 19 East, MDM, City of Reno, Washoe County, Nevada, being more particularly described as follows:

> Parcel 1 as shown on the Parcel Map for Frank J. Pacini, Parcel Map No. 279, File Number 416185, recorded on July 9, 1976 in the Official Records of Washoe County, Nevada.

*Description Prepared By:*
*James W. McGuire, P.L.S. 6025*
*Summit Engineering Corp.*
*5405 Mae Anne Ave.*
*Reno, NV 89523*



3/22/06

N DWGS Starbucks SURVEY PARCEL LEGAL doc

Exhibit "A-2"
O'NEILS PARCEL
APN 006-123-04

PARCEL 1:

BEGINNING at a point on the Southerly line of West 7th Street, whence the intersection of said line with the Westerly side line of Alvaro Street, Reno Nevada, bears North 76°10' East 241.83 feet; thence South 0°51' East 87.0 feet; thence South 76°10' West 50.0 feet; thence North 0°51' West 87.0 feet to the Southerly side line of West 7th Street; thence North 76°10' East 50.0 feet along said line to the point of beginning.

PARCEL 2:

COMMENCING at a point in the Southerly line of West 7th Street; whence the intersection of said side line the Westerly line of Alvaro Street, Reno, Nevada, bears N. 76°10' East 187.90 feet; thence South 0°51' East 87 feet to the point of beginning; thence South 0°51' East 50 feet; thence South 76°10' West 120.73 feet, more or less, to the East line of Keystone Avenue; thence North 2°20'00" East along the East line of Keystone Avenue 50.69 feet; thence North 76°10' East 120.73 feet, more or less, to the point of beginning.

PARCEL 3:

BEGINNING at a point on the Southerly line of West 7th Street, whence the intersection of said line with the Westerly side line of Alvaro Street, Reno, Nevada, bears North 76°10' East 291.83 feet; thence South 0°51' East 87.00 feet; thence South 76°10' West 14.03 feet to a point on the Easterly line of Keystone Avenue; thence North 2°13'30" East along the Easterly line of Keystone Avenue 88.21 feet to a point on the Southerly line of West 7th Street; thence North 76°10' East along the Southerly line of West 7th Street 9.17 feet to the true point of beginning.

PARCEL 4:

BEGINNING at a point on the Southerly line of West 7th Street, whence the intersection of said line with the Westerly side line of Alvaro Street, Reno, Nevada, bears North 76°10' East 187.90 feet; thence South 0°51' East 87.0 feet; thence South 76°10' West 53.93 feet; thence North 0°51' West 87.0 feet to the Southerly side line of West 7th Street; thence North 76°10' East 53.93 feet along said side line to the place of beginning.

Reference is made to License Survey no. 171372, filed March 1, 1949, Washoe County, Nevada, records:

BEING THE SAME PREMISES conveyed to SHELL OIL COMPANY,  a Delaware corporation, by (1) that certain deed dated March 7, 1962, by LUCILLE A. COOK, et vir, recorded in Book 620 of Deeds, Page 311, as Document No. 355223 and (2) that certain deed dated March 7, 1962, by ALFRED E. SPRINGER, et ux, recorded in Book 620 of Deeds, Page 200, as Document No. 354955, Records of Washoe County, Nevada.

SPACE BELOW FOR RECORDER

EXHIBIT "A-2"

EXCEPTING THEREFROM all parcels any portions lying with Keystone Avenue and West 7th Street.

ALSO EXCEPTING THEREFROM all right, title and interest, if any, in and to any oil, gas and other minerals (including, without limitation, helium, lignite, sulfur, phosphate and other solid, liquid and gaseous substances), regardless of the natured thereof and whether similar or dissimilar but only to the extent any of the foregoing is in it's natural state and natural location and not subject to the dominion and control of any person, and, upon thirty (30) days prior to written notice to Grantee, the right to explore for, develop and produce same, as well as the right to lease such portion of the property hereby reserved for such purposes, and all mineral and royalty rights whatsoever in, on under and pertaining to the property; but Grantor, its successors and assigns, shall have not right to use, or right of ingress to or egress from any part of the surface of the property for exploration and producing purposes, except with respect to (i) current activities at and any existing contractual or leasehold rights granted to third parties and (ii) any additional activities which have been consented to in writing by Grantee, whose consent shall not be unreasonable withheld. Except as set forth in the preceding sentence, any oil and gas drilling operations, shall be conducted by means of wells, the surface locations of which are on the other lands and which may be drilled into and bottomed in or under the property. Grantor shall exercise its rights under the foregoing mineral, oil and gas reservation so as not to disturb any improvements, installations, petroleum or other products contained in such improvements or installments or surface activities on the property. Grantor is to receive and retain all bonuses, rentals and royalties payable under such mineral, oil and gas lease or leases. Grantor may assign, transfer, sell convey such oil, gas and mineral reservations to any person, corporation, partnership or other entity, as reserved in Deed from SHELL OIL COMPANY, a Delaware corporation recorded July 8, 1998 in Book 5303, Page 671, as Document No. 2229152 of Official Records..

The above legal description was taken from previous Document No. 3490618.

SPACE BELOW FOR RECORDER



3366812
03/28/2006
13 of 15

ALSO
DESCRIBED
AS:

**EXHIBIT "A-2"**
**LEGAL DESCRIPTION**
~~BURKHALTER~~ ONEILS PARCEL
**APN 006-123-04**

A parcel situate within the Northeast 1/4 of Section 10, Township 19 North, Range 19 East, MDM, City of Reno, Washoe County, Nevada, being more particularly described as follows:

BEGINNING at the Northwest corner of Parcel 1 as shown on the Parcel Map for Frank J. Pacini, Parcel Map No. 279, File Number 416185, recorded on July 9, 1976 in the Official Records of Washoe County, Nevada;
thence along the westerly line of said Parcel 1 South 00°00'14" East a distance of 137.00 feet;
thence leaving said line South 77°00'46" West a distance of 120.73 feet to the easterly right-of-way line of Keystone Avenue;
thence along said line North 03°03'46" East a distance of 138.90 feet to the southerly line of West Seventh Street;
thence along said line North 77°00'32" East a distance of 113.11 feet to the Point of Beginning.

Said parcel contains an area of approximately 15608 square feet (0.358 acres).

Basis of Bearings: Nevada State Plane Coordinate System, West Zone (NAD 83/94)

*Description Prepared By:*
*James W. McGuire, P.L.S. 6025*
*Summit Engineering Corp.*
*5405 Mae Anne Ave.*
*Reno, NV 89523*



JAMES W.
McGUIRE
Exp: 12-31-07
No. 6025

3/22/06

N:\DWGS\Starbucks SURVEY BOUND_LEGAL.doc